IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KUEI-I WU, et al.          *

   Plaintiffs,           *

      v.                 *   Civil Action No.: RDB-07-CV-1170

MAMSI LIFE & HEALTH        *
INSURANCE COMPANY, et al.
                           *

   Defendants.
\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Kuei-I Wu ("Wu"), on behalf of herself and others similarly situated, filed this class action lawsuit in the Circuit Court for Baltimore County against her healthcare provider MAMSI Life & Health Insurance Co. ("MLH"), and MLH's parent companies, Mid-Atlantic Medical Services LLC ("MAMSI LLC"), and Mid-Atlantic Medical Services, Inc. ("MAMSI Inc.") (collectively "MAMSI" or "Defendants") for breach of contract, breach of the duty of good faith and fair dealing, and civil conspiracy. Defendants removed this action to this Court on May 3, 2007, pursuant to 28 U.S.C. § 1441. Wu seeks injunctive relief, monetary damages, and restitution. Wu alleges that, in the event that an insured is in an automobile accident, Defendants illegally direct health care providers to collect Personal Injury Protection ("PIP") from an automobile insurer as a precondition to submitting a claim for payment of medical services. Before removal to this Court, the Circuit Court for Baltimore County certified a class

1

that is the subject of the pending motion.[1]  Defendants have filed a Motion to Decertify the Class (Paper No. 143).  The parties fully briefed the motion and this Court conducted a hearing on the pending motion pursuant to Local Rule 105.6 (D. Md. 2010) on October 6, 2010.  For the reasons that follow, Defendants' Motion to Decertify the Class (Paper No. 143) is GRANTED.

BACKGROUND

Many of the facts of this case are thoroughly described in the Memorandum Opinion issued by this Court on October 15, 2008 and will not be recited in full here.  *See Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158 (D. Md. 2008) (Paper No. 99).  However, a brief discussion of the underlying facts and procedural history is warranted.

Wu initiated this action on September 24, 2004 by filing a three count class action complaint in the Circuit Court for Baltimore County against three separate MAMSI entities; MLH, MAMSI LLC, and MAMSI Inc.  On September 26, 2001, Wu was involved in an automobile accident while she was a full-time student at the University of Maryland.  At the time of the accident, Wu carried at least two insurance policies: (1) a health insurance plan issued by MLH, and (2) an automobile policy issued by GEICO.  Wu's health insurance plan was not governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

Wu sought medical treatment with Physiotherapy Associates, a participating healthcare provider under MLH's Preferred Provider Option plan to which she belonged.  Compl. ¶¶ 20-21. Under this plan, in exchange for providing medical care to MAMSI members, participating

---

[1] This Court subsequently modified the class to exclude federal government employees insured under federal employee health insurance contracts governed by the Federal Employee Health Benefit Act, 5 U.S.C. § 8910 *et seq.*, and non-Maryland residents.  *See Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158 (D. Md. 2008).

healthcare providers were paid at a negotiated rate and agreed not to balance, bill, or collect any other amount from members for whom they provided "Covered Services." *Id.* Wu's contract with MAMSI contained a Coordination of Benefits ("COB") provision that explicitly excluded any no-fault automobile insurance payments, such as PIP, from being considered in the application of the COB procedures. *Id.* at ¶ 18. Wu alleges that, "in a separate document known as the Provider Manual for Physicians and Practitioners, MAMSI illegally directs all providers within its healthcare plans that when the patient has been involved in an automobile accident, the providers must collect PIP benefits from the patient's automobile insurer first, before submitting any claims to MAMSI for payment." Mem. Supp. Pl.'s Cross Mot. at 4 (Paper No. 88); *see id.* Ex. A. Thus, according to Wu's complaint, MAMSI paid the participating healthcare providers for services rendered to Wu only after PIP benefits were exhausted. Wu argued that this scheme was in violation of section 19-507 of the Insurance Article of the Maryland Code, which provides that PIP benefits "shall be payable without regard to . . . any collateral source of medical, hospital, or wage continuation benefits." Md. Code Ann., Ins. § 19-507(a)(2).

The Circuit Court for Baltimore County granted in part and denied in part Wu's class certification motion on April 5, 2007. The Circuit Court certified a subclass consisting of "all owners of MAMSI healthcare plans since September 23, 2001 that also have automobile insurance policies, have had an automobile accident, and whose mandatory PIP coverage was partially or entirely exhausted prior to the use of any MAMSI healthcare benefits." Defs.' Notice of Removal (Paper No. 1), Ex. C at 13. The class certification order brought into the case for the first time class members with employee health plans governed by ERISA. On May 3, 2007, Defendants timely filed a Notice of Removal, having done so within thirty days of the

3

introduction of a federal question based on ERISA preemption. *See* Mem. Op. (Paper No. 68) at 5-7.

After a discovery dispute was brought to this Court's attention during a telephone conference on May 7, 2008, the parties were permitted to brief issues relating to the size of the class. Defendants filed a Motion for Clarification of Class Membership (Paper No. 80) and Plaintiffs filed a Cross Motion for Clarification of Class Definition (Paper No. 87).

The motions were framed as requests to modify the size of the class certified by the Circuit Court for Baltimore County, but the Defendants also called into question whether section 19-507 of the Insurance Article of the Maryland Code regulated health insurers. Wu argued that section 19-507 was applicable to all ERISA claims and prohibited MAMSI from making its health benefits secondary to PIP coverage. Although the class certification order from the circuit court was amended slightly, this Court did not amend the class certification order to exclude ERISA plan members because Defendants' "argument raise[d] complex and novel questions of Maryland law that go beyond simply whether Wu can serve as class representative." *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 165 (D. Md. 2008). Furthermore, the Defendants' "argument appear[ed] intertwined with a more fundamental question that reaches the crux of the entire case," and that "[r]esolution in favor of Defendants on this issue could prevent *any* claim by Plaintiffs under 19-507, whether by a member of an ERISA plan or not." *Id.* (emphasis in original).

Instead of deciding this issue of first impression under Maryland law, this Court certified the following question to the Maryland Court of Appeals:

> Does Maryland Code, Insurance Article § 19-507 prohibit or restrict a Maryland health insurer or a Maryland health maintenance organization from providing in

4

its group or individual contracts of insurance or membership contracts that its contractual health benefits may be secondary to Personal Injury Protection ("PIP") benefits under an automobile liability insurance policy where the automobile liability insurer is legally obligated to provide benefits for healthcare expenses?

Certification Order (Paper No. 108).

On October 20, 2009, in *MAMSI Life & Health Ins. Co. v. Wu*, 983 A.2d 88 (2009), the Maryland Court of Appeals determined that Maryland Code, Insurance Article section 19-507 does not apply to healthcare insurers. Thus, the determination of whether "Wu's insurance policy with MAMSI obligated MAMSI to pay participating healthcare providers, regardless of whether the PIP coverage also obligated the automobile insurance carrier," was a decision to be made by the District Court. *Id.* at 90 n.2.

As a result of the Maryland Court of Appeals holding, Wu may no longer proceed under a theory that MAMSI's practices violated section 19-507 of the Insurance Article of the Maryland Code. During oral argument on October 6, 2010, Plaintiffs' counsel conceded that Wu's argument was narrowed as a result of the Maryland Court of Appeals ruling. Nevertheless, Wu contends that this case may proceed as a class action under a breach of contract theory because the insurance contracts at issue prohibit the coordination of health benefits by making them secondary to PIP benefits. In short, Wu argues that MAMSI's conduct is prohibited under her contract with MLH, albeit without the force of a violation of statute.

## STANDARD OF REVIEW

Rule 23(c)(1)(C) of the Federal Rules of Civil Procedure provides simply that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). This Court has previously stated that "[a] district court has 'broad

discretion in determining whether the action may be maintained as a class action,' . . . and so long as the court considers the proper criteria, it is permitted to exercise such discretion." *Doe v. Lally*, 467 F. Supp. 1339, 1345 (D. Md. 1979) (citations omitted). As this court previously held, "[a] federal district court possesses the same broad discretion in determining whether to modify or even decertify a class." *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 162 (D. Md. 2008) (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)). In fact, a federal district court judge has an affirmative obligation to ensure that the class membership remains at all times consistent with the underlying facts and procedural posture of the case. *See Richardson v. Byrd*, 709 F.2d 1016, 1019 (5th Cir. 1983) ("Under Rule 23 . . . the district judge must define, redefine, subclass, and decertify as appropriate in response to the progression of the case from assertion to facts."); *Chisolm v. TranSouth Fin. Corp.* 194 F.R.D. 538, 544 (E.D. Va. 2000) ("[T]he Court is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification.").

Additionally, a court must take a close look at the facts relevant to the certification question, even if those facts "tend to overlap with the merits of the case." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *accord Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits."). The Supreme Court has noted that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[T]he class determination generally involves

6

considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).

ANALYSIS

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements necessary for proceeding as a class. All class actions in federal court must satisfy each of the four requirements under Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation. *Thorn*, 445 F.3d at 318. If those prerequisites are satisfied, then the proposed class must fit into at least one of the categories set forth under Rule 23(b). *Id.* In the present case, the Circuit Court for Baltimore County found that class certification was appropriate under the state rule equivalent of Rule 23. *See* Notice of Removal (Paper No. 1), Ex. C. Defendant argues, and for the reasons that follow, this Court agrees that Wu simply cannot establish the prerequisites of commonality or typicality, nor can she demonstrate that common questions predominate over questions affecting the individual class members.

**A. Rule 23(a)**

Rule 23(a) provides that a plaintiff may sue as a representative on behalf of a class only if:

> (1) the class is so numerous that joinder of all members is impracticable ("numerosity");
> (2) there are questions of law or fact common to the class ("commonality");
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and
> (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation").

Fed. R. Civ. P. 23(a)(1–4). The Fourth Circuit recently reiterated that:

> [T]he final three requirements of Rule 23(a) "tend to merge," with commonality and typicality "serving as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."

*Brown v. Nucor Corp.*, 576 F.3d 149, 152 (4th Cir. 2009) (quoting *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 337 (4th Cir. 1998) (internal quotations omitted)). This Court will address each requirement of Rule 23(a) in turn.

*1. Numerosity*

Rule 23(a)(1) provides that one of the requirements to bring a class action is that the class be "so numerous that joinder of all members is impracticable." The Fourth Circuit has held that "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypres v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). During the course of discovery, Defendants identified 2,771 MLH members who had contracts that allegedly prohibited MLH from coordinating benefits with PIP, or whose data suggested they might fall within the class. Numerosity is not contested by MAMSI, and this Court will take it as established.

*2. Commonality*

Rule 23(a)(2) requires a question of law or fact common to the class. "A common question is one that can be resolved for each class member in a single hearing," and does not "turn[ ] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks and citation omitted). The Fourth Circuit has held that, "in a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by,

the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n.4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Therefore, in the Fourth Circuit "[t]he common questions must be dispositive and overshadow other issues." *Lienhart*, 255 F.3d at 146.

Furthermore, "a representative plaintiff cannot establish commonality under [Rule 23(a)(2)] if the court must investigate each plaintiff's individual claim." *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 528 (D. Md. 2001) (quoting *Peoples v. Wendover Funding Inc.*, 179 F.R.D. 492, 498 (D. Md. 1998)). In other words, "[t]he need for a case-by-case determination of a material issue for each class member's claim also denotes that the claims of the class representative are not 'typical' of the claims of the individual class members." *Levitt v. Fax.com*, 2007 WL 3169078, at *3 (D. Md. 2007) (Nickerson, J.) (citing *Stott*, 916 F.2d at 145).

Wu alleges that she and the proposed class members all suffered damages as a result of MAMSI's scheme to make health benefits secondary to PIP benefits through its coordination practices. As set forth in her Memorandum in Opposition to the Defendants' Motion to Decertify the class, Wu quotes the original certification opinion issued by the Circuit Court for Baltimore County for what she takes to be the dispositive common issue in this case: "the primary issue for each class member is whether MAMSI's policy of instructing healthcare professionals to recover auto insurance PIP benefits prior to seeking compensation from MAMSI is in violation of MAMSI's individual healthcare agreement and/or the Maryland Insurance Code." Pls.' Opp'n Br. (Paper No. 147) at 5. Throughout oral argument, Plaintiffs' counsel repeatedly argued that the overriding issue in the case is MAMSI's scheme to coordinate PIP

benefits with its healthcare providers—that is, the alleged conduct by MAMSI to coordinate benefits *is* the common issue that predominates over any individual issues.

However, Defendants correctly point out that there are individualized issues that must be answered in each class member's case regardless of whether MAMSI coordinated benefits with PIP. Each class member's situation, MAMSI argues, is unique and would require this Court to resolve numerous fundamental questions for each potential claim to determine whether: (1) the claimant falls within the class definition; (2) a coordination of benefits scenario is actually present; (3) Defendants could be liable for the alleged coordination with a member's PIP coverage; and (4) damages were sustained by the claimant and for how much. Def. Mot. Decertify (Paper No. 143) at 15. MAMSI argues that a review of these individualized questions would also encompass a review of each member's claim to determine:

- Whether he was involved in a motor vehicle accident during the class period of September 23, 2001 to the present;

- Whether he was covered under an automobile policy at the time of the accident;

- Whether he had elected, and not waived, PIP benefits;

- Whether, in spite of the availability of PIP benefits, he elected not to open a claim with his automobile insurer;

- Whether he made a claim under his own automobile policy—and not the policy of an unrelated driver or a corporate policy—for PIP benefits;

- Whether the selection of PIP as primary and MLH as secondary was a voluntary decision by the insured or was influenced by either the medical provider or MAMSI policies;

- Whether PIP was exhausted without MLH doing anything to deny, reverse, or coordinate a claim;

- Whether an attorney, possibly for third-party claim reasons and avoidance of a lien over a third party recovery, directed Defendants to let PIP serve as the primary payer of medical bills;

- Whether he used funds from third-party settlements to pay medical bills;

- Whether his PIP benefits were used for covered medical expenses, lost wages, or other medical expenses not covered by the health plan;

- Whether his provider actually submitted a claim to MLH to be paid;

- Whether his provider submitted a claim to MLH, which was not paid due to the availability of PIP benefits;

- The amount of any such claim(s); and

- Whether it was his PIP benefits, and not MedPay coverage, exhausted due to covered medical payments.

MAMSI argues, and this Court agrees, that the individualized issues in this case are very similar to those addressed by this Court in *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521 (D. Md. 2001) (Messitte, J.). In *Ostrof*, two insureds brought suit against their automobile insurer, State Farm, alleging that they were denied reimbursement for medical bills and lost income under the PIP provision of their policies. *Id.* Much like Wu's claims in the present case, the plaintiffs in *Ostrof* argued that State Farm engaged in an overarching course of deceptive conduct designed to minimize the amount of PIP claims State Farm would pay. *Id.* at 522-23. In declining to certify a class under Rule 23(a)(2), Judge Messitte concluded that the case was "rife with individualized inquiries" and that "[f]undamental questions necessarily appl[ied] to each and every claimant." *Id.* at 528-29. Judge Messitte specifically identified fifteen fundamental questions that would apply to each claimant if the class were to proceed, including whether there was in fact an automobile accident, whether the claimant was injured, whether fraud was involved, and whether the individual claimant actually had to pay the amount State Farm denied, among others. *Id.* at 529.

In the present case, as in *Ostrof*, a case-by-case evaluation is necessary. As Defendants correctly point out, the necessity for individualized evaluations of claims is evidenced by Wu's own claims in this matter. When Wu first visited Physiotherapy Associates for medical treatment after her automobile accident, she designated her automobile insurance company, GEICO, as her primary insurance carrier. *See* Def. Mot. Decertify at 16; *id.* Ex. 6. Plaintiffs acknowledge that Wu's "choice to make PIP primary was accomplished without any personal interaction with Defendants," but argue that Wu's decision was a result of MAMSI's policy to coordinate PIP to make primary medical payments. Pls.' Opp'n Br. at 12. Plaintiffs' argument is not persuasive. There are a variety of reasons why a potential class claimant would choose to designate PIP as primary and MLH as secondary, and this determination must be made in every case where class members designated their PIP carrier as primary. For instance, did the claimant simply designate PIP as primary without any outside influence? Did MLH direct the claimant to designate PIP as primary? Did MLH direct the healthcare provider to steer the claimant towards choosing PIP as primary? Did a third party, such as an attorney, direct the claimant to designate PIP as primary? Or, did the medical provider direct the claimant to designate PIP as primary, perhaps due to the fact that the medical provider can bill at its full rate under PIP, whereas it receives a lower negotiated rate under its contract with MLH? More fundamentally, even before analyzing under what circumstances PIP was chosen as primary, an individualized inquiry is necessary to determine *if* PIP was chosen as primary, if it was waived, or if the claimant even had PIP coverage to begin with. Thus, it is clear that intensive inquiry must be made regarding the potential liability of MAMSI for each individual class member.

Plaintiffs attempt to distinguish *Ostrof* with another case decided by this Court, *Bulmash*

*v. Travelers Indem. Co.*, 257 F.R.D. 84 (D. Md. 2009) (Motz, J.). In *Bulmash*, the Plaintiffs claimed that they were entitled to statutory interest under the Maryland Insurance Article for late payment of PIP claims. In construing the predominance requirement of Rule 23(b)(3), the *Bulmash* court concluded that individual liability determinations would not preclude class certification. *See id.* at 90. However, in making this determination, this Court specifically noted that there was "no issue of third-party causation," and that the damages could have only resulted from Travelers conduct. *Id.* Here, MAMSI's liability does not turn on MAMSI's conduct alone, but instead turns on whether or not PIP coverage was designated as primary, whether MAMSI directed that PIP insurance be primary, whether third parties, such as attorneys and medical providers intervened, and numerous other individual determinations.

Furthermore, because Plaintiffs claim lies in contract, Defendants have asserted various affirmative defenses, such as waiver and estoppel, that that will turn on individual inquiries and facts peculiar to each claimant's case. In addition to inquiring into why and under what circumstances PIP benefits were designated as primary, additional inquiries must be made into whether an individual claimant elected to waive the enforcement of the alleged contractual prohibition of coordination with PIP coverage by designating PIP as primary. Similarly, to the extent that individual insureds or their counsel directed MAMSI to make PIP benefits primary, those class members may be estopped from now claiming a contractual breach.

Plaintiffs argue that MAMSI's affirmative defenses, such as waiver and estoppel, do not provide evidence of a lack of commonality among class members, but rather, tend to strengthen their commonality claims. Pls.' Opp'n Br. at 13. In support of this proposition, Plaintiffs cite this Court's opinion in *Miller v. Optimum Choice, Inc.*, No. 2003-3653, 2006 WL 2130640 (D.

Md. July 28, 2006). In that case, Judge Chasanow stated:

> Defendant does not argue that the affirmative defenses it asserts require individual inquiry, but instead implies that the defenses are equally applicable across the putative class. . . . Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members.

*Miller*, 2006 WL 2130640 at *7. While Plaintiffs are correct that the *Miller* court found that the affirmative defenses asserted by the Defendant provided an "additional link of commonality between class members," that argument does not stand up in light of the facts of the present case. In *Miller*, the defendant "d[id] not argue that the affirmative defenses it asserts require individual inquiry," and essentially conceded that defenses were common across the putative class. *Id.* As a result, this Court had no need to consider whether the defenses created individualized issues that would predominate in that case. Here, it is clear that the interactions between each class member and the healthcare provider, each class member's individual actions, and any involvement by attorneys representing class members will necessitate individualized inquiries that cannot be performed on a class-wide basis. The Defendants in this case have explicitly argued that the affirmative defenses they will assert against individual class members *are not* the same across the class. *See* Defs.' Mot. Decertify at 17. In this regard, the Fourth Circuit has held that "when the defendant's affirmative defenses . . . may depend on facts peculiar to each plaintiff's case, class certification is erroneous." *Broussard v. Meineke Discount Muffler Shops Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) (internal citations and quotations omitted).

Finally, lack of commonality among the class members is also evidenced by the extent to which individualized inquiries would be necessary to determine the extent of damages in this case. While it is true that the presence of individualized damages will not necessarily preclude a

14

finding of commonality, the Fourth Circuit has held that "individualized damage determinations cut against class certification under Rule 23(b)(3)." *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (citing *Broussard*, 155 F.3d at 342-43). In *Ward*, the Fourth Circuit held that because damages could be determined on the basis of a simple formula, the district court did not abuse its discretion in finding that the damage calculations were not individualized. *Ward*, 595 F.3d at 180. Here, however, there is no simple formula to determine damages for each class member. Under Maryland law, "[i]n a breach of contract action, upon proof of liability, the non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with reasonable certainty." *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. App. 2007) (internal citations omitted). Therefore, potential class claimants would need to prove the amount of PIP benefits actually exhausted due to the payment of covered medical expenses. Furthermore, because PIP benefits include benefits that would not be covered under an MLH health insurance contract,[2] each class member would also need to prove that the received PIP benefits went towards covered medical expenses. While Plaintiffs contend that with third-party discovery they would be able to prove the amount of PIP benefits exhausted for each claimant, they do not offer a solution for determining whether those PIP benefits were used for covered medical expenses or

---

[2] Pursuant to section 19-505(b)(2) of the Maryland Insurance Article, PIP benefits include:
    (i) payment of all reasonable and necessary expenses that arise from a motor vehicle accident and that are incurred within 3 years after the accident for necessary prosthetic devices and ambulance, dental, funeral, hospital, medical, professional nursing, surgical, and x-ray services;
    (ii) payment of benefits for 85% of income lost:
      1. within 3 years after, and resulting from, a motor vehicle accident; and
      2. by an injured individual who was earning or producing income when the accident occurred; and
    (iii) payments made in reimbursement of reasonable and necessary expenses incurred within 3 years after a motor vehicle accident for essential services ordinarily performed for the care and maintenance of the family or family household by an individual who was injured in the accident and not earning or producing income when the accident occurred.

for expenses not covered by their contracts with MAMSI, such as lost income, funeral expenses, and reasonable and necessary household expenses. Thus, this Court finds that damages for each class member would require a case-by-case analysis, and would turn on consideration of the individual facts pertaining to each individual class member. Therefore, resolution of the damages issue would be exceedingly difficult, if not impossible to establish on a class-wide basis. *See Broussard*, 155 F.3d at 342-43 (holding that where damages were "dependent upon consideration of the unique circumstances pertinent to each class member" claim was "not a natural candidate for class-wide resolution").

In light of the number and complexity of the individualized questions that must be answered for each class member, this Court is unable to find the commonality demanded by Rule 23(a)(2).

*3. Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts have recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected . . . ." *Gen. Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 157 n.13 (1982). The typicality requirement determines "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Bullock v. Bd. of Educ. of Montgomery County*, 210 F.R.D. 556, 560 (D. Md. 2002) (citations omitted). The class representative "must be part of the class and possess the

same interest and suffer the same injury as the class members." *Broussard*, 155 F.3d at 338. Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 340.

In *Ostrof*, this Court held that "[a]lthough it is not necessary that all class members suffer the same injury as the class representatives, where a purported class representative is subject to a unique defense that cannot be asserted against other members of the class (other than minor discrepancies), typicality may be lacking." *Ostrof*, 200 F.R.D. at 529 (citations omitted). In *Ostrof*, the court noted several defenses unique to the plaintiff and, as a result, found typicality lacking. *Id.*

As previously discussed, many of the proposed class claimants are subject to unique defenses. Indeed, Wu, the sole class representative, is subject to several unique defenses that preclude a finding of typicality under Rule 23(a)(3). For example, because Wu herself designated her automobile insurance as primary on her medical provider's election form, MAMSI has asserted the affirmative defense of waiver. *See* Defs.' Answer (Paper No. 6) at 6. In addition to affirmative defenses, many facts surrounding Wu's claims prove them to be atypical of the class. For example, Wu's medical provider never submitted any claim for Wu's treatment to MLH; Wu received all of her PIP benefits from GEICO; and Wu's attorney was involved in directing payments of her medical bills. Furthermore, Wu's own insurance contract is fundamentally different from approximately ninety five percent of the other proposed class members. This Court finds that Wu's claims are not typical of the class and do not meet the typicality requirements of Rule 23(a)(3).

  *4. Adequacy of Representation*

The final prerequisite under Rule 23(a) is that the persons representing the proposed class must be able "fairly and adequately to protect the interests" of all members of the class. The adequacy inquiry under Rule 23(a)(4) serves to uncover lack of common interests between named parties and the class they seek to represent. *See Gen. Tel. Co.*, 457 U.S. at 157-58 n.13. Representation will be considered "adequate" if the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof*, 200 F.R.D. at 530.

Because MAMSI raises no challenge to the adequacy of representation, this Court need not address the matter in depth. However, there is an overlap between the requirement of adequacy of representation and the requirement of typicality. *Gen. Tel. Co.*, 457 U.S. at 157. "As to both requirements, if the proposed class representative's claim is subject to a unique defense, the court may refuse to certify as class representative a plaintiff subject to that defense." *Ostrof*, 200 F.R.D. at 530 (citation omitted). Because Wu is subject to several unique defenses, her role as sole class representative is tenuous at best.

**B. Rule 23(b)**

While Plaintiffs' failure to satisfy the Rule 23(a) prerequisites is dispositive, this Court also finds that Plaintiffs cannot establish the maintainability requirements set forth in Rule 23(b). In other words, even if Plaintiffs had met their burden under Rule 23(a), this Court finds that this case should not proceed as a class action because the requirements of Rule 23(b) have not been met. It is well established that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co.*, 457 U.S. at 156. Wu has not been an insured of MLH since she graduated from the University of Maryland in

2006. Additionally, she has never had any contractual relationship with either MAMSI LLC or MAMSI Inc. In order to have standing to obtain injunctive relief, a plaintiff must show a sufficient likelihood that she will be affected by the allegedly unlawful conduct in the future. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). Because there is no threat of repeated injury to Wu due to any allegedly unlawful conduct by Defendants, she does not have standing to pursue future injunctive relief against Defendants.

This Court has held that "the general practice is to certify a Rule 23(b)(1)(A) action only in cases seeking injunctive or declaratory relief. *See Ostrof*, 200 F.R.D. at 524 n.3 (citing *In Re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1544 (11th Cir. 1987)). Similarly, Rule 23(b)(2) "does not cover cases where the primary claim is for damages, but is only applicable where the relief sought is . . . predominantly injunctive or declaratory." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 329 (4th Cir. 2006) (internal quotations and citation omitted). Plaintiffs must therefore satisfy the Rule 23(b)(3) requirements that the "common questions of law or fact predominate over questions affecting individual members" and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Plaintiffs cannot satisfy that standard.

The Fourth Circuit has held that the predominance requirement of Rule 23(b)(3) is "more stringent" than the commonality requirement of Rule 23(a). *See Thorn*, 445 F.3d at 319; *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n.4 (4th Cir. 2001). In *Ostrof*, this Court, after finding that the commonality requirement of Rule 23(a) was not met, concluded *a fortiori* that common issues did not predominate under Rule 23(b)(3). *Ostrof*, 200 F.R.D. at 530.

19

As detailed above, this case is rife with individualized inquiries surrounding the facts of each potential class members' interactions with MAMSI. The claims of the class members in this case would involve distinct inquiries leading to distinct conclusions as to each member. Were this Court to permit this case to go forward as a class action, the trial would collapse into individual mini-trials on the merits of and defenses to each class member's claim. Hence, this Court finds neither that "the common questions of law or fact predominate over questions affecting individual members" nor that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## CONCLUSION

For the reasons stated above, Defendants MAMSI Life & Health Insurance Company, et al.'s Motion to Decertify the Class (Paper No. 143) is GRANTED. This case shall proceed on Plaintiffs' individual claims.

A separate Order follows.

Dated: October 18, 2010                /s/_____
                                       Richard D. Bennett
                                       United States District Judge