IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KUEI-I WU,

    Plaintiff,

v.                                           Civil Action No.: RDB-07-1170

MAMSI LIFE & HEALTH
INSURANCE COMPANY, *et al.*

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Kuei-I Wu ("Wu"), filed this lawsuit in the Circuit Court for Baltimore County against her healthcare provider MAMSI Life & Health Insurance Co. ("MLH"), and MLH's parent companies, Mid-Atlantic Medical Services LLC ("MAMSI LLC"), and Mid-Atlantic Medical Services, Inc. ("MAMSI, Inc.") (collectively "MAMSI" or "Defendants") for breach of contract, breach of the duty of good faith and fair dealing, and civil conspiracy. Defendants removed this action to this Court on May 3, 2007, pursuant to 28 U.S.C. § 1441. Wu seeks injunctive relief, monetary damages, and restitution. Wu alleges that, in the event that an insured is in an automobile accident, Defendants illegally direct health care providers to collect Personal Injury Protection ("PIP") benefits from an automobile insurer as a precondition to submitting a claim for payment of medical services. The Circuit Court for Baltimore County previously certified this case as a class action. After removal, this Court certified a question of law to the Court of Appeals of Maryland. As a result of the Court of Appeals' ruling, this Court decertified the class on October 18, 2010, concluding that the

1

case shall proceed only on Plaintiff's individual claims. The parties have now filed cross-motions for summary judgment. This Court has reviewed the record, as well as the pleadings and exhibits, and finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, Plaintiff's Motion for Summary Judgment (ECF No. 159) is DENIED, and Defendants' Motion for Summary Judgment (ECF No. 160) is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

The facts of this case are thoroughly described in previous Opinions issued by this Court. *See Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158 (D. Md. 2008) (ECF No. 99); *Wu v. MAMSI Life & Health Ins. Co.*, 269 F.R.D. 554 (D. Md. 2010) (ECF No. 154). However, for the sake of clarity, the background facts and procedural history of this case are reiterated below.

On September 26, 2001, Wu was involved in an automobile accident while she was a full-time student at the University of Maryland. At the time of the accident, Wu carried at least two insurance policies: (1) a health insurance plan issued by MLH, and (2) an automobile policy issued by GEICO. Wu initiated this action on September 24, 2004 by filing a three count class action complaint in the Circuit Court for Baltimore County against three separate MAMSI entities; MLH, MAMSI LLC, and MAMSI Inc.

Wu sought medical treatment with Physiotherapy Associates, a participating healthcare provider under MLH's Preferred Provider Option plan to which she belonged. Wu Dep. 16-17, ECF No. 159-1. Under this plan, in exchange for providing medical care to MAMSI members, participating healthcare providers were paid at a negotiated rate and

agreed not to balance, bill, or collect any other amount from members for whom they provided "Covered Services." Pl.'s Ex. 2, ECF No. 159-2. Wu's contract with MAMSI contained a Coordination of Benefits provision that allows MLH to coordinate benefit allocation with other insurers to the extent a member is insured by more than one carrier. *Id.* at 19. The contract permits MLH to coordinate its obligations with "payments available from any other group health plan which covers the Member." *Id.* The contract defines "health plan" as "any plan providing benefits or services for or by reason of medical or dental care or treatment," and lists several types of health plans covered by the contract. *Id.* The contract specifically states that the term "health plan" "does not include any . . . automobile reparations (no-fault) insurance." *Id.* Wu alleges that, "in a separate document known as Guide for Physicians Practitioners, and Office Administrators MAMSI directed providers such as [Physiotherapy Associates], when the patient has been involved in an automobile accident, to collect PIP benefits from the patient's automobile insurer first, before submitting any claims to MAMSI for payment." Pl.'s Mot. Summ. J. 3, ECF No. 159; *see also* Pl.'s Ex. 5. Thus, according to Wu, MAMSI would pay the participating healthcare providers for services rendered to Wu only after PIP benefits were exhausted in violation of her contract with MLH. Wu originally argued that this scheme was in violation of section 19-507 of the Insurance Article of the Maryland Code, which provides that PIP benefits "shall be payable without regard to . . . any collateral source of medical, hospital, or wage continuation benefits." Md. Code Ann., Ins. § 19-507(a)(2). Wu sought class certification in the Circuit Court for Baltimore County on this theory.

The Circuit Court granted in part and denied in part Wu's class certification motion

on April 5, 2007. The Circuit Court certified a subclass consisting of "all owners of MAMSI healthcare plans since September 23, 2001 that also have automobile insurance policies, have had an automobile accident, and whose mandatory PIP coverage was partially or entirely exhausted prior to the use of any MAMSI healthcare benefits." Defs.' Notice of Removal (ECF No. 1), Ex. C at 13. The class certification order brought into the case for the first time class members with employee health plans governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* On May 3, 2007, Defendants timely filed a Notice of Removal, having done so within thirty days of the introduction of a federal question based on ERISA preemption. *See* Mem. Op. (ECF No. 68) at 5-7.

After removal to this Court, the parties were permitted to brief issues relating to the size of the class. Defendants filed a Motion for Clarification of Class Membership (ECF No. 80) and Plaintiffs filed a Cross Motion for Clarification of Class Definition (ECF No. 87). The motions were framed as requests to modify the size of the class certified by the Circuit Court for Baltimore County, but the Defendants also called into question whether section 19-507 of the Insurance Article of the Maryland Code regulated health insurers. Wu argued that section 19-507 was applicable to all ERISA claims and prohibited MAMSI from making its health benefits secondary to PIP coverage. Although the class certification order from the circuit court was amended slightly, this Court did not amend the class certification order to exclude ERISA plan members because Defendants' "argument raise[d] complex and novel questions of Maryland law that go beyond simply whether Wu can serve as class representative." *Wu v. MAMSI Life & Health Ins. Co.*, 256 F.R.D. 158, 165 (D. Md. 2008). Furthermore, the Defendants' "argument appear[ed] intertwined with a more fundamental

4

question that reaches the crux of the entire case," and that "[r]esolution in favor of Defendants on this issue could prevent *any* claim by Plaintiffs under 19-507, whether by a member of an ERISA plan or not." *Id.* (emphasis in original).

Instead of deciding this issue of first impression under Maryland law, this Court certified the following question to the Maryland Court of Appeals pursuant to the Maryland Uniform Certification of Questions of Law Act, MD. CODE ANN., CTS. & JUD. PROC. §§ 12-601 – 12-613:

> Does Maryland Code, Insurance Article § 19-507 prohibit or restrict a Maryland health insurer or a Maryland health maintenance organization from providing in its group or individual contracts of insurance or membership contracts that its contractual health benefits may be secondary to Personal Injury Protection ("PIP") benefits under an automobile liability insurance policy where the automobile liability insurer is legally obligated to provide benefits for healthcare expenses?

Certification Order (ECF No. 108).

On October 20, 2009, in *MAMSI Life & Health Ins. Co. v. Wu*, 983 A.2d 88 (2009), the Maryland Court of Appeals determined that Maryland Code, Insurance Article section 19-507 does not apply to healthcare insurers. Thus, the determination of whether "Wu's insurance policy with MAMSI obligated MAMSI to pay participating healthcare providers, regardless of whether the PIP coverage also obligated the automobile insurance carrier," was a decision to be made by the District Court. *Id.* at 90 n.2.

As a result of the Maryland Court of Appeals holding, Wu could no longer proceed under a theory that MAMSI's practices violated section 19-507 of the Insurance Article of the Maryland Code. During oral argument on October 6, 2010, Plaintiffs' counsel conceded that Wu's argument was narrowed as a result of the Maryland Court of Appeals ruling. As

such, Wu argued that MAMSI's conduct is prohibited under her contract with MLH, albeit without the force of a violation of statute. Wu sought to prosecute her contract-related claims on behalf of the class certified by the Circuit Court for Baltimore County. However, by Memorandum Opinion and Order of October 18, 2010, this Court decertified the class, and held that the case "shall proceed on Plaintiff's individual claims." *Wu v. MAMSI Life & Health Ins. Co.*, 269 F.R.D. 554, 565 (D. Md. 2010).

After Wu's automobile accident on September 26, 2001, she sought medical treatment from an orthopedic surgeon, Ira Gelb, M.D., who in turn referred her to Physiotherapy Associates for physical therapy. *See* Wu Dep. 16-17. Dr. Gelb and Physiotherapy Associates were participating providers under Wu's Preferred Provider Option ("PPO") plan with MLH. As preferred providers, these health care providers received discounted rates for their services as negotiated by MLH. *See* Pl.'s Mot. Summ. J. 2-3; Defs.' Mot. Summ. J. 5 n.5. In other words, healthcare providers in MLH's preferred provider network receive less than their standard rate for their services when MLH is the paying entity.

Notably, automobile insurance companies, such as GEICO in this case, generally do not negotiate discounted rates with healthcare providers. *See, e.g.*, Defs.' Mot. Summ. J. at 5 n.5, and accompanying exhibits. As a result, healthcare providers such as Physiotherapy Associates receive their standard rate for provided services when those services are billed to automobile insurance companies. Defendants argue, and Wu agrees,[1] that this arrangement

---

[1] Wu agrees with the general proposition that the arrangement gives healthcare providers a financial incentive to bill automobile insurance carriers, but states that should a healthcare provider seek full payment of billed charges in this manner "they would be breaching their contract with the insured

presents healthcare providers in MLH's network with a financial incentive to bill automobile insurance carriers for covered services in order to receive full payment for provided services. *Id.*

Before obtaining treatment from Physiotherapy Associates, Wu filled out paperwork that specifically designated GEICO, her automobile insurance company, as "primary insurance," and MAMSI as "secondary insurance." *See* MLH Payment Form, ECF No. 8. Wu signed each page of the document, and has confirmed that her handwriting appears in the sections designating MAMSI as secondary insurance. *See id.*; *see also* Wu Dep. 43-48. Wu claims that she was "not sure how to complete the forms and sought guidance from the [Physiotherapy Associates] office staff on how to complete them." Pl.'s Mot. Summ. J. 4. She claims that the Physiotherapy Associates staff members selected Wu's PIP insurance as primary and instructed her to designate her MAMSI insurance as secondary. *Id.* 4-5.

Accordingly, Physiotherapy Associates billed GEICO as the primary payer for Wu's medical services. At some point, Wu's PIP coverage was exhausted and some portion of her medical bills went unpaid. Thereafter, Physiotherapy Associates instituted a lawsuit against Wu for those unpaid bills. *See* Pl.'s Mot. Summ. J. 3. Contrary to Wu's unsupported claim that MLH "refused" to pay Physiotherapy Associates, *see* Pl.'s Mot. Summ. J. 4, MLH's records indicate that Physiotherapy Associates never submitted any medical claims to MLH for payment in connection to Wu's treatment. *See* Hrycenko Aff. ¶ 19 ("MLH never received any claim from Physiotherapy Associates for services rendered to Ms. Wu and

---

and MLH by doing so." Pl.'s Interrog. Resp. ¶ 24, ECF No. 160-2. As the contractual dispute in this case centers on the contract between Wu and MLH, it is unclear what contract Plaintiff may be referring to.

therefore has never denied any such claim based on PIP availability or for any other reason.").[2] Accordingly, there is no genuine issue of material fact on that question. MLH never received a claim from Physiotherapy Associates in connection to Wu's treatment. It therefore could not have denied such a claim.

Although Physiotherapy Associates never billed MLH for Wu's treatment, MLH nevertheless opened a file in her case for the purposes of subrogation recovery—that is, for the purposes of recovering costs from the third party involved in the automobile accident with Wu. *Id.* ¶ 3. Shortly after her automobile accident, Wu retained legal counsel,[3] and it was that counsel that primarily communicated with MLH and her other insurance carrier, GEICO. On April 22, Wu's attorney contacted GEICO requesting payment for Wu's various medical treatments. Gordon Letter, ECF No. 160-11. In that regard, Wu's attorney requested that GEICO "forward [their] PIP draft, and any available Medical Payment benefits" to him. *Id.* Presumably when Wu's PIP benefits were exhausted, and GEICO no longer made payments on Wu's behalf to Physiotherapy Associates, Wu's Attorney contacted MLH and advised it that Physiotherapy Associates was "billing Ms. Wu for services and had refused to submit bills to MLH even after Ms. Wu's PIP benefits were exhausted." Hrycenko Aff. ¶ 17. The MLH representative told Wu's attorney that Physiotherapy Associates was a participating provider, and stated that if Physiotherapy

---

[2] While there is some evidence that Wu's *attorney* requested that MLH pay the balance of Wu's Physiotherapy Associates bill, *see* Gordon Aff., ECF No. 161-5; Gordon Letter, ECF No. 167-1, there is no evidence in the record indicating that Physiotherapy Associates ever submitted claims to MLH for payment.

[3] Wu apparently retained three separate attorneys in connection with her dealings with Physiotherapy Associates and MLH. The first two, Bernard Cook and Lee Gordon, no longer represent her. The third attorney, Dennis O'Brien, is one of Wu's current attorneys.

Associates submitted claims they would be paid, even if previously denied as untimely. *Id.* After learning from Wu's attorney that Physiotherapy Associates had sued Wu for unpaid services, a MLH representative offered to have MLH contact Physiotherapy Associates directly. *Id.* at ¶ 18. Wu's attorney, or someone from his office, declined that invitation however. *Id.* As a result, MLH never contacted Physiotherapy Associates about Wu's unpaid medical bills.

Despite that fact that MLH never denied a claim submitted by Physiotherapy Associates, Wu argues that "Defendants breached their contractual duty to [Wu] through the use of a secret agreement or illegal scheme with its preferred healthcare providers to do what it was specifically prohibited from doing under the express terms of [Wu's] policy, namely requiring its preferred healthcare providers to first charge to exhaustion [Wu's] PIP coverage for such services." Compl. ¶ 25, ECF No. 2. As a result of this alleged scheme, Wu claims that in addition to suffering physical injury and incurring medical expenses to treat such injuries, she has incurred $3,000 in lost wages and has not received a total of $2,234.50 in PIP benefits.

## STANDARD OR REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), *cert denied*, 540 U.S. 822 (2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2720 (3d ed. 1983)).

## ANALYSIS

On October 18, 2010, this Court decertified the class in this lawsuit, and held that only Wu's individual claim may move forward. Those individual claims are for (1) breach of contract; (2) breach of the duty of good faith and fair dealing; and (3) civil conspiracy. Essentially, Wu argues that Defendants breached her health insurance contract by coordinating benefits, and dictating the order in which those benefits were to be paid, between Wu's automobile insurance carrier and her healthcare provider. More specifically, she argues that the Defendants had a secret agreement whereby its preferred providers were directed to, in the case of automobile accident patients, first exhaust the patient's PIP benefits before submitting any bills to the Defendants for payment. Wu argues that the preferred providers in the Defendants' network acted as agents of Defendants in perpetrating this alleged scheme.

On the other hand, Defendants argue that because Wu herself directed her MLH insurance as secondary to her PIP coverage, and because her attorney specifically directed MLH to not contact Physiotherapy Associates on Wu's behalf, there could be no coordination between MLH and Physiotherapy Associates. The Defendants note that because MLH never received a claim, it therefore did not have the chance to deny benefits on the basis of PIP exhaustion. Defendants further argue that because there was no breach of the contract, Wu's claims for breach of the duty of good faith and fair dealing and for civil conspiracy must necessarily fail because Maryland law does not recognize such claims in the absence of a breach of a contract or some other underlying tortuous injury.

As the parties' arguments overlap to a significant degree, and for the sake of clarity

and brevity, the parties' claims and arguments will be discussed together in the following sections, with the understanding that each motion will be considered on its own merits.

## I. Breach of Contract

In determining that Maryland Code, Insurance Article § 19-507 does not prohibit or restrict a company such as MLH from providing that its contractual health benefits may be secondary to PIP benefits, the Court of Appeals of Maryland framed the issue before this Court: "[t]he United States District Court may or may not determine that Wu's insurance policy with MAMSI obligated MAMSI to pay the participating healthcare providers, regardless of whether the [PIP] coverage also obligated the automobile insurance carrier." *Mamsi Life & Health Ins. Co. v. Kuei-I Wu*, 983 A.2d 88, 90 n.2 (Md. 2009). Therefore, the contract at issue is the health insurance contract between MLH[4] and Wu. What are not at issue, at least directly, are the contracts between MLH and Physiotherapy Associates, and between MLH and GEICO.

To state a claim for breach of contract in Maryland, a plaintiff must plead the existence of a contractual obligation owed by the defendant to the plaintiff and a material breach of that obligation. *RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 434 (Md. 2010). It is well established that privity of contract is an essential element of a cause of action for breach of contract, thus a contract cannot be enforced by one not a party to it. *See, e.g., Ashe v. Giant of Md., L.L.C.*, No. AW-06-1293, 2007 WL 7020451, at *6 (D. Md. July

---

[4] The Court of Appeals of Maryland was not clear as to which MAMSI entity is subject to the breach of contract action. In this action, Wu has sued three entities: MLH, MAMSI LLC, and MAMSI, Inc. While Wu's complaint is unclear as to which entity allegedly breached the contract, the contract itself is clear that it is between Wu and MLH. *See* Pl.'s Ex. 2, ECF No. 159-2.

17, 2007) ("Only a party to a contract can enforce that contract.") (citing *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F.Supp. 312, 322 (D.Md.1983)). Thus, there must be a contract between the parties for there to be a breach.

Here, Wu's contract with MLH prohibits MLH from coordinating its obligations with no-fault automobile reparations insurance. However, there is no evidence to support, and indeed Wu has not argued, that MLH coordinated with Wu's automobile insurance carrier, GEICO, in order to designate PIP benefits as her primary insurance. Instead, Wu argues that through a "secret agreement," Defendants indirectly designated PIP as primary insurance in automobile accident cases through coordination with MLH's own preferred providers.

However, regardless of whether there was a secret agreement between MLH and Physiotherapy Associates to designate PIP as primary insurance, it is abundantly clear that Wu herself elected GEICO as primary, and MLH as secondary. As this Court previously noted "Wu's 'choice to make PIP primary was accomplished without any personal interaction with Defendants.'" *Wu v. Mamsi*, 269 F.R.D. at 561 (quoting Wu's Opposition to Defendants' Class Decertification Motion). Moreover, this Court further concluded that:

> There are a variety of reasons why [Wu] would choose to designate PIP as primary and MLH as secondary . . . . For instance, did [she] simply designate PIP as primary without any outside influence? Did MLH direct [Wu] to designate PIP as primary? Did MLH direct [Physiotherapy Associates] to steer [Wu] towards choosing PIP as primary? Did a third party, such as [Wu's] attorney, direct [her] to designate PIP as primary? Or, did [Physiotherapy Associates] direct [Wu] to designate PIP as primary, perhaps due to the fact that the [Physiotherapy Associates] can bill at its full rate under PIP, whereas it receives a lower negotiated rate under its contract with MLH?[5]

---

[5] The alterations in this quotation reflect the fact that, in this Court's previous Memorandum Opinion, the issues revolved around a class of potential plaintiffs, and not Wu specifically.

*Id.*

Wu's theory of the case would require this Court to conclude that MLH directed Physiotherapy Associates to steer Wu towards choosing PIP as primary and MLH as secondary without any evidence to conclude as much. On the other hand, it is undisputed that Wu chose PIP as her primary insurance, and moreover, after her PIP coverage was exhausted, her own attorney specifically sent Wu's bills to GEICO, and directed MLH to not contact Physiotherapy Associates regarding Wu's outstanding medical bills. Indeed, the Physiotherapy Associates administrator testified in her deposition that had Wu designated MLH as her primary insurance carrier, and PIP as secondary, Physiotherapy Associates would honor that choice and would have billed MLH as Wu's primary. *See* Corridon Dep. 23, ECF No. 160-9.

Moreover, it is undisputed that Physiotherapy Associates never submitted Wu's bills to MLH for payment, and MLH therefore did not have the opportunity to deny any benefits owed to Wu on the ground of coordination of PIP benefits or otherwise. Accordingly, although Wu has shown the existence of her contract with MLH, she has failed to support her allegation that MLH breached that contract. *See RRC Northeast, LLC v. BAA Md., Inc.*, 994 A.2d 430, 434 (Md. 2010). As such, Defendants are entitled to summary judgment on Wu's breach of contract claim.

## II. Breach of the Duty of Good Faith and Fair Dealing

The parties seek both seek summary judgment on Wu's claim against Defendants for breach of the duty of good faith and fair dealing. While Maryland law recognizes an implied covenant of good faith and fair dealing in contracts, "the covenant *is limited* to prohibiting

one party from acting in such a manner as to prevent the other party from performing his obligations under the contract." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 444 (4th Cir. 2001) (citing *Eastern Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 182-83 (4th Cir. 2000) (emphasis in original)). Moreover, as this Court recently reiterated, "Maryland does not recognize an independent cause of action for breach of the implied contractual duty of good faith and fair dealing." *Barry v. EMC Mortg.*, No. DKC-10-3120, 2011 WL 2669436, at *7 (D. Md. July 6, 2011) (quoting *Baker v. Sun Co.*, 985 F. Supp. 609, 610 (D. Md. 1997)). Instead, the duty of good faith and fair dealing is "merely part of an action for breach of contract." *Id.* (quoting *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002).

Here, Wu has not argued that any of the Defendants acted in a way so as to prohibit *Wu* from performing her duties under her contract with MLH as required by *Edell*. 264 F.3d at 444. Instead, Wu argues that Defendants, acting in concert with one another, breached their duty of good faith and fair dealing in performing their own obligations. *See* Pl.'s Mot. Summ. J. 9-11, ECF No. 159. This argument must fail. *Edell*, 264 F.3d at 444; *see also Davis v. Wilmington Finance, Inc.*, No. PJM-09-1505, 2010 WL 1375363 (dismissing breach of duty of good faith and fair dealing claim where breach of contract claim also failed). Accordingly, Defendants are entitled to summary judgment on Wu's second cause of action.

### III. Civil Conspiracy Claim

In Wu's third cause of action, she alleges that the Defendants, acting in concert with unnamed co-conspirators, tortuously interfered with her contractual relationships with GEICO and MLH. Under Maryland law, "a civil conspiracy is a combination of two or

more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal" that results in damage to a plaintiff. *Hill v. Brush Eng'g Materials, Inc.*, 383 F.Supp.2d 814, 821 (D. Md. 2005) (citations omitted). Thus, a conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff. *Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 428 (D. Md. 2000) (citing *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 265 n. 8 (Md. 1994)). Furthermore, a clear agreement to conspire is necessary because the "independent acts of two wrongdoers do not make a conspiracy." *Murdaugh Volkswagen, Inc. v. First Nat'l Bank*, 639 F.2d 1073, 1076 (4th Cir.1981).

The underlying tort relied on by Wu in her civil conspiracy claim is tortuous interference with contract. Essentially, Wu argues that the Defendants entered into an agreement to tortuously interfere with her contract with GEICO, *see* Pl.'s Opp'n 4, ECF No. 161, and her contract with MLH, *see id.* at 9. Setting aside the fact that Wu has not even addressed the elements she must establish in order to prove a tortuous contractual interference claim,[6] she has not alleged any facts in support of her argument that the Defendants had a clear agreement to interfere with her contracts. Accordingly, Wu's civil conspiracy claim must fail, and Defendants are entitled to summary judgment on this claim.

---

[6] *See Brass Metal Products, Inc. v. E-J Enterprises, Inc.*, 984 A.2d 361, 383 (Md. Ct. Spec. App. 2009) (setting forth the elements for intentional interference with contractual relations).

## CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Summary Judgment (ECF No. 159) is denied, and the Defendant's Cross-Motion for Summary Judgment (ECF No. 160) is granted.

A separate Order follows.

Dated: July 22, 2011

/s/ *Richard D. Bennett*
Richard D. Bennett
United States District Judge